IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF
HINDS COUNTY, MISSISSIPPI

**FILED**

CHARLES JOHNSON, INDIVIDUALLY,
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF ETHEL JOHNSON, AND ON
BEHALF OF AND FOR THE USE AND BENEFIT
OF THE WRONGFUL DEATH BENEFICIARIES
OF ETHEL JOHNSON

JAN 26 2015

BARBARA DUNN, CIRCUIT CLERK
BY_____D.C.

**PLAINTIFFS**

VS.                                                    CAUSE NO.: 15-42

TRINITY MISSION HEALTH & REHAB OF CLINTON,
LLC d/b/a TRINITY MISSION HEALTH & REHAB OF
CLINTON, COVENANT DOVE, LLC,
COVENANT DOVE HOLDING COMPANY, LLC,
ARK MISSISSIPPI HODLING COMPANY, LLC,
CHRISTOPHER J. MURPHY, C. MICHAEL BAGLEY,
WENDY KELLY, UNIDENTIFIED ENTITIES 1-10, AND
JOHN DOES 1-10 (as to the TRINITY MISSION HEALTH
& REHAB FACILITY)                                      **DEFENDANTS**

**COMPLAINT**

**JURY TRIAL REQUESTED**

COMES NOW, the Plaintiff, Charles Johnson, Individually, and as Personal

Representative of the Estate of Ethel Johnson, and on behalf of and for the use and benefit of the

Wrongful Death Beneficiaries of Ethel Johnson, and for his causes of action against Defendants,

states:

**I.      PARTIES**

1.01    Charles Johnson is the Personal Representative of the Estate of Ethel Johnson,

and brings this action individually, and on behalf of the Estate of Ethel Johnson, and on behalf of

and for the use and benefit of the wrongful death beneficiaries of Ethel Johnson, and pursuant to

Mississippi law.

1.02    Ethel Johnson was, at all times material hereto, a resident of Trinity Mission



**EXHIBIT**

A

Health & Rehab, a skilled nursing facility located at 102 Woodchase Drive, Clinton, MS 39056 from on or about February 2012 until June 2013.

    1.03    Defendant, Trinity Mission Health & Rehab of Clinton, LLC (hereinafter "Trinity" or "Nursing Home Defendants" or "Trinity Defendants") is a business operating in the state of Mississippi with its principal place of business located in Hinds County, Mississippi, and that may be served with process to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201, or a location where said agent may be found. Trinity was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Trinity.

    1.04    Defendant, Covenant Dove, LLC (hereinafter "Covenant Dove" or "Nursing Home Defendants" or "Trinity Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi, 39201, or a location where said agent may be found. Covenant Dove was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Trinity.

    1.05    Defendant, Covenant Dove Holding Company, LLC, (hereinafter "Covenant Dove Holding Company" or  "Nursing Home Defendants" or "Trinity Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201, or a location where he said agent may be found. Covenant Dove Holding Company was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically

infirm, mentally impaired, and/or in need of nursing care and treatment at Trinity.

1.06    Defendant, Ark Mississippi Holding Company, LLC (hereinafter "Ark Mississippi" or "Nursing Home Defendants" or "Trinity Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

1.07    Wendy Kelly, Defendant, (hereinafter "Kelly" or "Nursing Home Defendants" or "Trinity Defendants") is a resident citizen of Mississippi, and that may be served with process at 5815 Warriors Trail, Vicksburg, Mississippi 39180, or a location where she may be found.

1.08    Christopher J. Murphy, Defendant, (hereinafter "Murphy" or "Nursing Home Defendants" or "Trinity Defendants") is a resident citizen of Tennessee, and that may be served with process at 2723 Summer Oaks Drive, Bartlett, Tennessee 38134, or a location where he may be found. Murphy was, and remains, an owner and operator of the Trinity Defendants.

1.09    C. Michael Bagley, Defendant, (hereinafter "Bagley" or "Nursing Home Defendants" or "Trinity Defendants") is a resident citizen of Tennessee, and that may be served with process at 2723 Summer Oaks Drive, Bartlett, Tennessee 38134, or a location where he may be found.  Bagley was, and remains, an owner and operator of the Trinity Defendants.

1.10    Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is currently unable to identify despite diligent efforts. Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and treatment of, Ethel Johnson, during her residency at Trinity. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions or others with respect to the care and treatment of Ethel Johnson during her

residency at Trinity.

    1.11    Separate Defendants Unidentied Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts. Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of Ethel Johnson during her residency at Trinity. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Ethel Johnson during her residency at Trinity.

    1.12    At all times material hereto, Defendants owned, operated and/or controlled Trinity Mission Health & Rehab. The actions of each of Trinity Defendants' servants, agents and employees as set forth herein, are imputed to the Trinity Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.    JURISDICTION AND VENUE

    2.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.12 as if set forth herein.

    2.02    Jurisdiction and venue are proper in the First Judicial District of Hinds County, Mississippi, in that a substantial alleged act or omission occurred and/or a substantial event that caused the injury occurred in whole or in part in the First Judicial District of Hinds County, Mississippi.

## III.    FACTUAL SUMMARY

    3.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-2.02 as if set forth herein.

    3.02    Ms. Johnson began her residency with the Trinity Defendants on or around

February 2012. On June 14, 2014, Ms. Johnson died as a result of the injuries she suffered at Defendants' facility. That throughout said residency, the Facility, including any of its staff or other personnel, failed to possess and exercise that degree of care, diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel. Ms. Johnson suffered numerous falls, contracted infections, medical conditions, skin conditions, bruises, dehydration, malnutrition, injuries, abuse and neglect, unexplained injuries, fractures, had an unkept appearance, suffered disfigurement, poor hygiene, mental decline, and she suffered other injuries, and ultimately death, as a result of the improper care and treatment provided to her by the Facility and/or its staff or other personnel throughout her residency with the Facility. Ms. Johnson suffered many incidents, abuse and neglect, improper care, and injuries, including but not limited to the following:

- The Facility represented that it could care for a patient like Ms. Johnson but they consistently failed in their assessment of Ms. Johnson and her risk for falls, and failed to adequately intervene to decrease the risk of Ms. Johnson falling and suffering injury from falls, including, but not limited to, a subdural hematoma and a right hip fracture.

- There were numerous falls, and numerous falls resulting in injuries and even death at the fault of the Facility. Ms. Johnson suffered falls on at least the following dates: 4/8/12, 8/4/12, 4/8/13, 4/16/13, and 5/27/13. On May 27, 2013, Ms. Johnson suffered a fall from her wheelchair where she sustained a fracture to her right hip. Ms. Johnson declined as a result of her falls, including being unable to ambulate, limiting her mobility, and requiring significant assistance. The nursing home failed to take proper interventions relating to Ms. Johnson being a fall risk. No interventions were taken, and if taken, were inappropriate.

- Ms. Johnson, became wheelchair bound as a result of the Facility's actions, particularly after suffering her right hip fracture on May 27, 2013. Ms. Johnson died on June 14, 2014 as a result of her right hip fracture. Thus, the Facility caused Ms. Johnson's death.

- Ms. Johnson required numerous hospitalizations as a result of the negligence and inaction of the Facility.

- Ms. Johnson frequently had bruises, skin tears, and other skin conditions while at the facility.

- Ms. Johnson was malnourished, suffering from abnormal lab values and significant weight loss.

- Ms. Johnson suffered from infections.

- The charting was infrequent, had gaps, and did not meet the standard of care.

- Ms. Johnson had problems with skin turgor and had poor hydration status.

- The nursing home failed to meet the standard of care in regard to therapies.

- Ms. Johnson suffered unexplained injuries, including bruising and lacerations.

- Ms. Johnson received poor personal care while he was a resident of the Facility. By way of example, a surgeon had to be brought in to cut Ms. Johnson's toenails. Ms. Johnson was incontinent and was not changed and cleaned in accordance with the standard of care.

The conditions reflected herein are readily apparent based on a review of Ms. Johnson's chart. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, Ms. Johnson suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, fractures, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate standard of care with regard to the care and treatment provided to Ms. Johnson throughout her residency with the Facility.

3.03    Defendants were well aware of Ms. Johnson's medical condition and the care that she required when they represented that they could adequately care for her needs.

3.04    At all times material to this lawsuit, Defendants held themselves out as being:

a.      Skilled in the performance of nursing, rehabilitative and other medical support services;

b.      Properly staffed, supervised, and equipped to meet the total needs of their

nursing home residents;

c.      Able to specifically meet the total nursing home, medical, and physical therapy needs of Ethel Johnson and other residents like her; and,

d.      Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

3.05   The Trinity Defendants failed to discharge their obligations of care to Ethel Johnson. As a consequence thereof, Ethel Johnson suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death. The scope and severity of the recurrent wrongs inflicted upon Ethel Johnson while under the care of the facility accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma as described above.

3.06   There were numerous falls, and numerous falls resulting in injuries and even death at the fault of the Defendants. Ms. Johnson required numerous hospitalizations as a result of the negligence and inaction of the Defendants. Ms. Johnson suffered unexplained injuries, including bruising and lacerations as a result of the Defendant's actions and inactions. Ms. Johnson received poor personal care while she was a resident of the Facility. The charting was infrequent, had gaps, and did not meet the standard of care. All of the above identified injuries, as well as the conduct specified below, caused Ethel Johnson to lose her personal dignity and her death to be preceded by extreme and unnecessary pain, degradation, anguish, and emotional trauma.

3.07   The wrongs complained of herein were of a continuing nature, and occurred throughout Ethel Johnson's stay at Defendants' facility.

3.08    Plaintiff alleges that on all of the occasions complained of herein, Ethel Johnson was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

3.09    Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Ethel Johnson.

3.10    Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE TRINITY DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.11    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.10 as if set forth herein.

3.12    Defendants owed a duty to residents, including Ethel Johnson, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

3.13    Defendants owed a duty to residents, including Ethel Johnson, to exercise reasonable care in providing care and services in a safe and beneficial manner.

3.14    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of Ethel Johnson.

3.15    The negligence of Defendants includes, but is not limited to, the following acts

and omissions:

a.   The failure to provide the minimum number of staff necessary to assist the residents, including Ethel Johnson, with their needs;

b.   The failure to provide adequate supervision for Ethel Johnson to protect her from injuries, falls, wandering and the unexplained injuries within the facility;

c.   The failure to provide appropriate therapies to avoid Ms. Johnson's preventable cognitive and social decline;

d.   The failure to provide proper fall precautions, supervision, and interventions to prevent Ethel Johnson existing medical conditions to worsen to the point of becoming life-threatening;

e.   The failure to provide adequate interventions to and supervision of Ethel Johnson to prevent her from falling and being injured within the facility;

f.   The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Ethel Johnson's condition;

g.   The failure to provide sufficient numbers of qualified nursing personnel to meet the total needs of Ethel Johnson;

h.   The failure to increase the number of nursing personnel to ensure that Ethel Johnson:

   1.   Received timely and accurate care assessments;

   2.   Received prescribed treatment, medication, and diet;

   3.   Received necessary supervision; and

   4.   Received timely nursing and medical intervention due to a significant change in condition.

i.     The failure to provide nursing personnel sufficient in number to ensure that Ethel Johnson attained and maintained her highest practicable level of physical, mental and psychosocial well-being;

j.     The failure to provide adequate supervision to the nursing staff so as to ensure that Ethel Johnson received proper fall prevention interventions, adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Ethel Johnson;

k.     The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Ethel Johnson received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

l.     The failure to provide a nursing staff that was properly staffed, qualified, and trained;

m.    The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility of any interested person;

n.     The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

o.     The failure to provide care, treatment, and medication in accordance with

physician's orders;

p.    The failure to provide a safe environment;

q.    The failure to maintain medical records on Ethel Johnson in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

    1.    The diagnosis of Ethel Johnson;

    2.    The treatment of Ethel Johnson; and

    3.    The assessment and establishment of appropriate care plans of care and treatment; and

r.    The failure to protect Ethel Johnson from harm within the facility.

s.    The failure to provide proper pressure sore relief, interventions, and prevention.

t.    The failure to provide Ethel Johnson with adequate fluid intake to prevent dehydration;

u.    The failure to provide adequate nutrition, prevent weight loss, and provide appropriate nutritional interventions;

v.    The failure to provide Ethel Johnson with adequate and appropriate hygiene care;

w.    The failure to provide and ensure that Ethel Johnson received adequate hygiene and sanitary care to prevent infection;

x.    The failure to provide adequate skin care.

3.16    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Ethel Johnson.

3.17    As a direct and proximate result of the negligence of Defendants as set out above,

Ethel Johnson suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required Ms. Johnson to incur significant hospital and medical expenses.

3.18    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE AGAINST THE TRINITY DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.19    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-3.18, as if fully set forth herein.

3.20    Separate Defendants owed a duty to residents, including Ethel Johnson, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

3.21    Separate Defendants owed a duty to residents, including Ethel Johnson, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

3.22    Separate Defendants owed a duty to assist all residents, including Ethel Johnson, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

3.23    Separate Defendants failed to meet the standard of care and violated their duty of care to Ethel Johnson through mistreatment, abuse, and neglect. The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

a.  The failure to provide proper supervision, fall precautions and interventions to prevent Ethel Johnson from falling and suffering injuries from falls within the facility;

b.  The failure to properly assess Ethel Johnson for the risk of development and progression of skin conditions and infections;

c.  The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Ethel Johnson;

d.  The failure to monitor and document significant changes in Ethel Johnson's condition;

e.  The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Ethel Johnson changed;

f.  The failure to implement and ensure that an adequate nursing care plan for Ethel Johnson was followed by nursing personnel;

g.  The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

h.  The failure to provide Ethel Johnson with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

i.  The failure to provide care, treatment, and medication in accordance with physician's orders;

j.  The failure to properly and timely notify a physician of significant changes in Ethel Johnson's physical condition;

k.  The failure to maintain medical records on Ethel Johnson in accordance

with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.      The diagnosis of Ethel Johnson;

2.      The treatment of Ethel Johnson; and

3.      The assessment and establishment of appropriate care plans of care and treatment.

l.   The failure to adequately and appropriately monitor Ethel Johnson and recognize significant changes in her health status;

m.   The failure to respond to significant signs and symptoms of change in the condition of Ethel Johnson;

n.   The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medical aides to meet the total needs of Ethel Johnson;

o.   The failure to increase the number of nursing personnel to ensure that Ethel Johnson:

1. received timely and accurate assessments;

2. received prescribed treatment, medical and diet;

3. received necessary supervision;

4. received timely nursing and medical intervention due to a significant change in condition.

p.   The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment of Ethel Johnson and other residents in

order to protect Ethel Johnson's skin integrity and to prevent the formation of skin tears, pressure sores, lesions, rashes, bruises, contractures, and infections;

q.  The failure to respond to significant signs and symptoms of change in the condition of Ethel Johnson;

r.  The failure to provide nursing personnel sufficient in number to ensure that Ethel Johnson attained and maintained her highest level of physical, mental, and psychosocial well-being;

s.  The failure to provide adequate supervision to the nursing staff so as to ensure that Ethel Johnson received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, medications, safety, and skin care to prevent injuries at the facility;

t.  The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure Ethel Johnson received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

u.  The failure to provide a nursing staff that was properly staffed, qualified and trained;

v.  The failure to provide and ensure an adequate nursing care plan as well as revisions based on the needs of Ethel Johnson;

w.  The failure to implement and ensure that an adequate nursing care plan for

Ethel Johnson was followed by nursing personnel;

x.   The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

y.   The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

z.   The failure to properly assess Ethel Johnson for the risk falls;

aa.   The failure to provide proper devices to Ethel Johnson;

bb.   The failure to provide Ethel Johnson with adequate and appropriate fall interventions;

cc.   The failure to provide Ethel Johnson with adequate and appropriate observation and examination so as to timely and adequately intervene to prevent the falls and injuries from falls with the facility;

dd.   The failure to provide Ethel Johnson with adequate and appropriate nursing care, treatments, and medication;

ee.   The failure to provide care, treatment, and medication in accordance with physician's orders;

ff.   The failure to properly and timely notify Ethel Johnson's attending physician of significant changes in Ethel Johnson's physical condition, to wit: injuries, and persistent, unresolved problems relating to the care and

physical condition of Ethel Johnson resulting in unnecessary pain, agony, and suffering on the part of Ethel Johnson;

gg.    The failure to provide Ethel Johnson with adequate and appropriate assessment for fluid management to prevent dehydration;

hh.    The failure to maintain an adequate and appropriate fluid maintenance program;

ii.    The failure to ensure that Ethel Johnson received adequate assessment of her nutritional needs;

jj.    The failure to provide a safe environment, prevent falls, and provide proper interventions to prevent falls;

kk.    The failure to maintain medical records on Ethel Johnson in accordance with acceptable professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

    1.    the diagnosis of Ethel Johnson;

    2.    the treatment of Ethel Johnson; and

    3.    the assessment and establishment of appropriate care plans of care and treatment;

ll.    The failure to adequately and appropriately monitor Ethel Johnson and recognize significant changes in her health status; and

mm.    The failure to properly notify the family of Ethel Johnson of significant changes in her health status.

3.24    A reasonably prudent nursing home operating under the same or similar

conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of Ethel Johnson's injuries and death. Ethel Johnson's injuries and death were foreseeable to these Defendants.

3.25    Defendants' conduct in breaching the duties owed to Ethel Johnson was grossly negligent, willful, wanton, malicious and reckless.

3.26    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Ethel Johnson suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, Ms. Johnson incurred significant medical expenses.

3.27    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF ETHEL JOHNSON AGAINST THE TRINITY DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.28    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 3.27, as if fully set forth herein.

3.29    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including Ethel Johnson.  Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Ethel

Johnson, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Ms. Johnson.

3.30     The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Ethel Johnson, includes, but is not limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

1.     The failure to provide Ethel Johnson with necessary and adequate fall risk interventions;

2.     The failure to provide Ethel Johnson with adequate and appropriate hygiene care;

3.     The failure to provide and ensure that Ethel Johnson received adequate hygiene and sanitary care;

4.     The failure to provide clean bed linens to Ethel Johnson as needed to prevent urine and fecal contact for an extended period of time;

5.     The failure to provide adequate devices and interventions to Ethel Johnson;

6.     The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

7.     The failure to provide adequate supervision for Ethel Johnson to prevent falls and unexplained injuries within the facility;

8.     The failure to provide proper custodial care, supervision, interventions and observation to prevent Ethel Johnson's existing medical conditions  and injuries to worsen to the point of becoming life-threatening;

9.     The failure to properly assess Ethel Johnson for the risk of falls and

injuries from falls within the facility;

10. The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Ethel Johnson's condition;

11. The failure to protect Ethel Johnson from receiving unexplained injuries and falls;

12. The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nursing assistants, and medication aides (nursing personnel) to meet the total needs of Ethel Johnson;

13. The failure to increase the number of personnel to ensure that Ethel Johnson:

    I.    Received timely and accurate care assessments;

    II.   Received prescribed treatment, medication, and diet;

    III.  Received necessary supervision; and

    IV.   Received timely intervention due to a significant change in condition.

14. The failure to provide nursing personnel sufficient in number to ensure that Ethel Johnson attained and maintained her highest level of physical, mental and psychosocial well-being;

15. The failure to provide adequate supervision to the nursing staff so as to ensure that Ethel Johnson received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and

progress in the physical condition of Ms. Johnson;

16.    The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Ethel Johnson received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

17.    The failure to provide nursing staff that was properly staffed, qualified, and trained;

18     The failure to provide and ensure an adequate nursing care plan based on the needs of Ethel Johnson;

19.    The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Ethel Johnson changed;

20.    The failure to implement and ensure that an adequate nursing care plan for Ethel Johnson was followed by nursing personnel;

21.    The failure to adopt adequate guidelines, policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person;

22.    The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care;

23.   The failure to properly and timely notify Ethel Johnson's attending

physician or hospital of significant changes in Ms. Johnson's physical

condition, specifically: skin conditions, infections, bruises, falls, head

injuries, unexplained injuries, a hip fracture, dehydration, poor hygiene,

disfigurement, and persistent and unresolved problems relating to the care

and physical condition of Ethel Johnson resulting in his pain, agony, and

suffering;

24.   The failure to provide a safe environment;

25.   The failure to maintain medical records on Ethel Johnson in accordance with

accepted professional standards and practices that are complete, accurately

documented, readily accessible, and systematically organized with respect to:

   i.   The diagnosis of Ethel Johnson;

   ii.   The treatment of Ethel Johnson; and

   iii.   The assessment and establishment of appropriate care plans of

   care and treatment.

26.   The failure to adequately and appropriately monitor Ethel Johnson

and recognize significant changes in her health status;

27.   The failure to protect Ethel Johnson from harm within the facility;

28.   The failure to respond to significant signs and symptoms of change in

the condition of Ethel Johnson;

29.   The failure to provide Ethel Johnson with appropriate skin care;

30.   The failure to provide Ethel Johnson with adequate and

appropriate observation and examination for skin breakdown.

32. The failure to access, intervene, and prevent Ms. Johnson's frequent falls resulting in severe injury, injuries within the facility, and other unexplained injuries.

3.31    As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Ethel Johnson, she suffered injuries as set herein, all of which required Ms. Johnson to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which resulted in death.

3.32    WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FOUR: BREACH OF FIDUCIARY DUTY AGAINST THE TRINITY DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.33    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.32 as if fully set forth herein.

3.34    Because of his mental and physical infirmities, Ethel Johnson was particularly dependent upon Defendants, their employees and agents for her daily care and well-being. Because of the nature of this dependency, the representations of Defendants that they could and would provide necessary care and the dominant influence Defendants exhorted over Ethel Johnson on a daily basis while she resided at Trinity, Ms. Johnson and her family held in all

Defendants a special confidence and trust. Defendants accepted this special confidence and trust by admitting Ethel Johnson to their facility and by determining the level of care to be provided to Ms. Johnson.

3.35    Ethel Johnson and her family relied upon Defendants' superior knowledge, skill, and abilities, which they held themselves out to possess. Ethel Johnson and her family also relied on the Defendants to provide care for Ethel Johnson who, because of her age and infirmities, was not able to care for herself.

3.36    By virtue of the nature of the services Defendants provide to Ethel Johnson, the special relationship that existed between Defendants and Ms. Johnson, the extortion of influence Defendants had over Ms. Johnson, the huge disparity of power and unequal bargaining position existing between Defendants and Ms. Johnson, as well as all of the other surrounding circumstances, including but not limited to, Ethel Johnson's mental and physical infirmities, Defendants occupied a position of trust and confidence toward Ms. Johnson that required among other things fidelity, loyalty, good faith, and fair dealing by the Defendants.

3.37    By accepting payment for services and care that was not provided to Ethel Johnson, and concealing and failing to disclose the abuse and neglect of Ms. Johnson, Defendants breached their confidential and fiduciary duties, namely, the duties of good faith and fair dealing, to Ms. Johnson by failing to provide the appropriate level of care and services to which she was entitled.

3.38    As a proximate cause of the foregoing breaches of duty by Separate Defendants, Ethel Johnson suffered injuries as set forth herein.

3.39    WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate

Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.  Plaintiff also seeks the imposition of a constructive trust on all wrongfully profits and proceeds arising out of Separate Defendants' breach of fiduciary duty to Ethel Johnson

**COUNT FIVE: STATUTORY SURVIVAL CLAIM AGAINST
THE TRINITY DEFENDANTS, JOHN DOES 1 THROUGH 10, AND
UNIDENTIFIED ENTITIES 1 THROUGH 10**

3.40    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.39, as if fully set forth herein.

3.41    As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including Ethel Johnson, Ms. Johnson suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress.  As a result, Ethel Johnson incurred significant hospital and medical expenses.

3.42    As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Ethel Johnson died on June 6, 2014, thereby incurring funeral, burial, and other related expenses.

3.43    WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for Ethel Johnson's death, including, but not limited to medical expenses, costs of administration of Ethel Johnson's estate, and other related expenses incurred as a result of Separate Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish,

disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT SIX: STATUTORY WRONGFUL DEATH CLAIM AGAINST TRINITY DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.44    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.43, as if fully set forth herein.

3.45    As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Ethel Johnson, Defendants caused the death of Ethel Johnson.

3.46    As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Ethel Johnson suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment.  Ethel Johnson died on June 6, 2014, thereby incurring funeral, burial and other related expenses.

3.47    As a result of the death of Ethel Johnson, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

3.48    WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to Ethel Johnson's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against

Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Ethel Johnson including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled.

### COUNT SEVEN: INDIVIDUAL LIABILITY AND LIABILITY PURSUANT TO PIERCING THE CORPORATE VEIL AGAINST COVENANT DOVE, COVENANT DOVE HOLDING COMPANY, ARK MISSISSIPPI HOLDING COMPANY, CHRISTOPHER J. MURPHY, C. MICHAEL BAGLEY, WENDY KELLY, AND ANY OF THE OTHER OWNERS OR OPERATORS OF TRINITY MISSION HEALTH & REHAB OF CLINTON NAMED IN THIS COMPLAINT, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.49    Plaintiff re-alleges and incorporates that allegations in paragraphs 1.01-3.48, as if fully set forth herein.

3.50    Separate Defendants, Covenant Dove, CDHC, AMHC, Murphy, Bagley, Kelly, the Trinity Defendants operating Trinity Mission Health & Rehab, John Does 1-10, and unidentified entities 1-10 owned and operated Trinity. These named Defendants as corporate officers, owners, and operators, directly participated and/or authorized the commission of the negligent, grossly negligent, and fraudulent acts as articulated above, and are thus, personally liable for the torts named herein. These named Defendants allocated the financial resources in such a way as to create inadequate staffing, supervision, and supplies. As articulated above, these inadequacies caused Ms. Johnson's injuries and death.

3.51    These Defendants used Trinity to perpetuate a fraud upon Plaintiff. Defendants were intent on obtaining Plaintiff's funds for their own personal use with no intention of performing their duties and used Trinity to improperly shield themselves from personal liability. Trinity was not properly capitalized, was not properly staffed, and did not have adequate

supplies. Said Defendants abused the corporate entities of Trinity to perpetuate fraud and evade contractual and tort responsibility.

3.52    Defendants intentionally engaged in common law fraud and knowingly concealed or failed to disclose material facts, even though Defendants knew or reasonably should have known, that because of the surrounding circumstances that Ethel Johnson and her family were ignorant of the articulated material facts and did not have an equal opportunity to discover the truth.    Specifically, Defendants either personally or through their agents or employees misrepresented the material facts either by omission or affirmative statements that they were willing to, and would, provide the proper care, treatment and services to Ethel Johnson, even though Defendants know that they would provide as little care and treatment and services as possible in order to maximize Defendants' profits at the expense of Ethel Johnson.  Further, Defendants made the misrepresentations with the intent to induce Ethel Johnson and her family to take some action: specifically, to admit and not remove Ethel Johnson from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were no qualified to render care or services in accordance with the law during Ms. Ethel Johnson's residency beginning with her admission to Trinity in February of 2012 through her death, on June 6, 2014.   As a proximate cause of Defendants' concealment and failure to disclose, these adverse material facts, Ethel Johnson suffered injuries as set forth above.

3.53    Said Defendants are liable as owners and operators of Trinity for their negligent acts or omissions in the care of the residents, including Ms. Johnson.  The corporate identity of Trinity should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants.  Said Defendants were de facto owners and

operators (through their corporate layering) of Trinity and were negligent and grossly negligent in their operation of Trinity.  Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Trinity are carried out and failed in these duties.  Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services.  Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.54   Said Defendants are liable as owners and operators of Trinity for their negligent acts or omissions in the care of the residents, including Ms. Johnson.  The corporate identity of Trinity should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants.  Said Defendants were de facto owners and operators (through their corporate layering) of Trinity and were negligent and grossly negligent in their operation of Trinity .  Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Trinity are carried out and failed in these duties.  Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services.  Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.55   Defendants are further liable for their provision of nurse consultants to the facility. Defendants had in place a system of providing nurse consultants to the nursing home facilities. The nurse consultants provided by Defendants directly affected patient care at Trinity.

Upon information and belief, nurse consultants are hired by Covenant Dove, Murphy, and

Bagley and paid by said entity(s). Wendy Kelly is/was a nurse consultant responsible for Trinity

and/or oversaw the nurse consultants who were responsible for Trinity. The facility is

supervised by Covenant Dove, Murphy, and Bagley, and sent by said entity(s) to visit the nursing

homes, including Trinity. These nurse consultants directly affect patient care. Because of the

failures of the nurse consultants to discover, through their responsibilities, the failures listed

herein, Ms. Johnson was harmed and died. The nurse consultant breached the standard of care as

to monitoring the care and treatment of Ms. Johnson. The result of the failure of Covenant Dove,

Murphy, Bagley, and Wendy Kelly and Covenant Dove's nurse consultants to perform their job,

including conduct adequate quality assurance audits, caused the residents of Trinity, including

Ms. Johnson, to be harmed due to the failures of the nursing staff.

    3.56    WHEREFORE, based on such conduct of Separate Defendants as set of above,

Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate

Defendants including, but not limited to, medical expenses, physical pain and suffering, mental

anguish, disability, humiliation, disfigurement, and death in an amount to be determined by the

jury, plus costs and all relief to which Plaintiff is entitled by law.

### COUNT EIGHT: NEGLIGENCE, NEGLIGENT SUPERVISION, AND INADEQUATE CONTROL OF TRINITY BY COVENANT DOVE, COVENANT DOVE HOLDING COMPANY, ARK MISSISSIPPI HOLDING COMPANY, CHRISTOPHER J. MURPHY, C. MICHAEL BAGLEY, WENDY KELLY, AND THEIR AGENTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

    3.57    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01

through 3.56 as if fully set forth herein.

    3.58  Defendant Covenant Dove, CDHC, AMHC, Murphy, Bagley and Wendy Kelly, and

their agents and officers, John Does 1-10, and Unidentified Entities 1 through 10 were the

owners, operators, service providers, and managers of Trinity during the residency of Ms. Johnson. Upon information and belief, Defendants' authority is clear through their actions as well as their agreements. By becoming operators and managers, Defendants willingly and voluntarily assumed the ultimate responsibility to operate their nursing home in a manner that would ensure that each resident, including Ms. Johnson, met her highest practicable physical, mental and psychosocial well-being. Further, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly, were negligent in their provision of support services to Trinity. Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly, were charged with properly supervising both their employees and agents, as well as Trinity's employees and agents.

3.59    Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly, failed in its operation, supervision and control of Trinity's employees and agents. The Trinity facility operated in a negligent manner both a global and a daily basis at the hands and direction of Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly. Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly, were routinely involved in the decision-making, supervision, and control of Trinity employees. Upon information and belief, actions taken by Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly in providing nurse consultants, as well as others in supervisory roles at Trinity, failed to conform to the standard of care. Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly, by and through this supervision and support, was involved in the management, care and treatment of residents at the Facility in general, and to Ms. Johnson, in particular, and failed in these actions.

3.60    Covenant Dove had in place a system of providing nurse consultants to the nursing home facilities, including Trinity. Nurse consultants are hired by Covenant Dove, paid

by Covenant Dove, are supervised by Covenant Dove and sent by Covenant Dove to visit the nursing homes, including Trinity. Nurse Consultants provided assistance in identifying interventions that **should** be in place as it relates to individuals who have been assessed to be at risk for falls. Nurse Consultants directly affected the prevention of falls at Trinity. Upon information and belief, nurse consultants offered training, staffing resources, routine visits, and guidance and meetings with leadership, If the Covenant Dove nurse consultant had been doing her job, the chart reviews and her visits would have demonstrated deficiencies and, at the very least, it would have been discovered that Ms. Johnson had numerous falls, had numerous falls with serious injury, had no assessments related to interventions, and had improper and/or ineffective fall prevention interventions in place. If the Covenant Dove nurse consultant had reviewed Ms. Johnson's records, it would have become apparent that something was very wrong. Because of the failures of the Covenant Dove nurse consultants to discover, through their responsibility to review charts, the failures listed herein, Ms. Johnson was harmed and died. Had the nursing consultant brought to the attention of Trinity personnel, the extreme lack of fall prevention interventions as to Ms. Johnson, then interventions could have been taken to stop the absolute disregard for Ms. Johnson's falls, injuries and death. If the nurse consultant had been reviewing or auditing charts properly, she would have discovered that Ms. Johnson was unnecessarily suffering falls and injuries due to a lack of appropriate fall prevention interventions. The nurse consultant breached the standard of care as to monitoring the care and treatment of Ms. Johnson. The result of the failure of Covenant Dove's nurse consultants to conduct adequate quality assurance audits caused the residents of Trinity, including Ms. Johnson, to be harmed due to the failures of the nursing staff.

     3.61    Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly's decisions

as to employing sufficient numbers and adequate levels of staffing directly impacted the care provided to residents, including Ms. Johnson.  Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly also had absolute and complete authority to allocate and/or apportion costs and expenses to Trinity and in such manner as Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly may deem necessary or appropriate from time to time.  This allocation of costs directly affected the care received by residents, including Ms. Johnson. The allocation of resources or lack thereof at Trinity contributed to Ms. Johnson's injuries as alleged herein.

3.62    Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly negligently and improperly directed the care provided to the residents at Trinity.  Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly committed negligence in regard to decision-making control, committed negligence in regard to who was staffed, how much was staffed, budgeting, directing care through corporate nurses, auditing care provided, providing and implementing policies and procedures, and providing other "support services", among other failures in services.

3.63    Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents were required to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems particularly when those problems could reasonably cause or contribute to an injury to a resident of the facility.

3.64    Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents were charged with creating and implementing proper policies and procedures and training and failed in this endeavor.

3.65    Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley,

and Wendy Kelly and their agents were required to properly supervise the nursing homes they had agreed to provide "support services" to, including Trinity, and failed to supervise each nursing home in the manner in which a reasonably prudent person similarly situated would and failed to similarly provide adequate support services and take steps to ensure that the nursing home residents, including Ms. Johnson, were receiving adequate and appropriate care.

3.66  Upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents failed to timely and adequately review records related to the operation of each nursing home (including a review by nurse consultants and quality assurance personnel) in order to ensure that the residents, including Ms. Johnson, received adequate and appropriate care.

3.67  Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents failed to ensure that the facility had sufficient numbers of qualified nursing personnel, depending upon the number of residents and the acuity level of the facility.  Such failures resulted in injuries to Ms. Johnson, including falls and injuries, as set forth in the preceding paragraphs.

3.68  Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents failed to adequately assess, evaluate and supervise nursing personnel so as to ensure that Ms. Johnson received appropriate nursing care, in accordance with Defendants' policies and procedures.

3.69  Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and their agents failed to provide nursing staff that was properly staffed, qualified, and trained.

3.70  A reasonably prudent company in the position of Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly and reasonably prudent persons in the position of

Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly operating under the same or similar conditions, would not have failed to provide the services, supervision, operation, support and care listed in the above paragraphs. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Ms. Johnson's injuries.

3.71    A reasonably careful management company, managerial authority, or service provider operating under similar circumstances, would foresee that the failure to provide the ordinary care, supervision, operation, support, and services listed above would result in devastating injuries and death to Ms. Johnson.

3.72    Defendants' conduct in breaching the duties owed to Ms. Johnson was grossly negligent, willful, wanton, malicious and reckless.

3.73    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Ms. Johnson suffered injuries and death, and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment.  As a result, Ms. Johnson incurred significant medical expenses.

3.74    WHEREFORE, upon information and belief, Covenant Dove, CDHC, AMHC, Murphy, Bagley, and Wendy Kelly controlled the management, care and treatment of the residents of Trinity, such as Ms. Johnson, and are responsible for the negligent acts complained of herein.  Based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

**COUNT NINE: CLAIM OF DUTY OF COVENANT DOVE, COVENANT DOVE HOLDING COMPANY, ARK MISSISSIPPI HOLDING COMPANY, CHRISTOPHER J.**

## MURPHY, C. MICHAEL BAGLEY, AND WENDY KELLY TO MS. JOHNSON BASED ON AGENCY

3.75    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 3.74 as if fully set forth herein.

3.76    Defendants Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly were the agents of Trinity and, as such agents they negligently failed to fulfill their duties owed to third persons, such as Ms. Johnson.

3.77    In its failure to fulfill its duties to Trinity, Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly are liable for its negligence, in the performance of its duties to such third persons, such as Ms. Johnson.

3.78    As articulated herein, Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly controlled the management, operation and activities of Trinity to such an extent that it amounted to a duty of care owed to third persons, such as Ms. Johnson.

3.79    As articulated herein, Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly breached the standard of care, by and through its acts of omission and commission, which caused or contributed to the injuries and death of Ms. Johnson.

3.80    Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly owed an obligation to use its control, "support", and decisionmaking not to cause injury or death to those third persons who were residents of Trinity, including Ms. Johnson.

3.81    Covenant Dove, Covenant Dove Holding Company, Ark Mississippi Holding Company, Christopher J. Murphy, C. Michael Bagley, and Wendy Kelly violated their obligation/duty relating to its control of Trinity, which violation of its obligation/duty caused or contributed to the injuries and death of Ms. Johnson.

3.82    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## PRAYER FOR RELIEF

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, Charles Johnson, Individually, and for the use and benefit of the wrongful death beneficiaries of Ethel Johnson, and for her causes of action, prays for judgment against all Defendants, as follows:

1.    For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained;

2.    For all general and special damages caused by the alleged conduct of Defendants;

3.    For the costs of litigating this case;

4.    For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5.    For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the _____ day of January, 2015.

PLAINTIFF, CHARLES JOHNSON,
INDIVIDUALLY, AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
ETHEL JOHNSON, AND ON BEHALF OF AND
FOR THE USE AND BENEFIT OF THE
WRONGFUL DEATH BENEFICIARIES OF
ETHEL JOHNSON

BY: _____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129 B. SOUTH PRESIDENT ST. (39201)
Post Office Box 23785
Jackson, Mississippi 39225
Tel:     (601) 949-5080
Fax:     (601) 949-5538
Email: paul@wnwlegal.com
          courtney@wnwlegal.com
          matt@wnwlegal.com

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF**
**HINDS COUNTY, MISSISSIPPI**

**FILED**

**JAN 2 6 2015**

BARBARA DUNN, CIRCUIT CLERK

BY_____D.C.

**CHARLES JOHNSON, INDIVIDUALLY,**
**AND AS PERSONAL REPRESENTATIVE OF**
**THE ESTATE OF ETHEL JOHNSON, AND ON**
**BEHALF OF AND FOR THE USE AND BENEFIT**
**OF THE WRONGFUL DEATH BENEFICIARIES**
**OF ETHEL JOHNSON**

**PLAINTIFFS**

**VS.**                                                   **CAUSE NO.:_____**

**TRINITY MISSION HEALTH & REHAB OF CLINTON,**
**LLC d/b/a TRINITY MISSION HEALTH & REHAB OF**
**CLINTON, COVENANT DOVE, LLC,**
**COVENANT DOVE HOLDING COMPANY, LLC,**
**ARK MISSISSIPPI HODLING COMPANY, LLC,**
**CHRISTOPHER J. MURPHY, C. MICHAEL BAGLEY,**
**WENDY KELLY, UNIDENTIFIED ENTITIES 1-10, AND**
**JOHN DOES 1-10 (as to the TRINITY MISSION HEALTH**
**& REHAB FACILITY)**                                     **DEFENDANTS**

**CERTIFICATE OF EXPERT CONSULTATION**
**PURSUANT TO MISSISSIPPI CODE ANNOTATED § 11-1-58**

I hereby certify pursuant to Miss. Code Ann. § 11-1-58(1)(a) that I have reviewed the

facts of this case and have consulted with at least one expert qualified pursuant to the Mississippi

Rules of Civil Procedure and the Mississippi Rules of Evidence to give expert testimony as to

standard of care or negligence and who I reasonably believe is knowledgeable in the relevant

issues involved in this action.  I have concluded on the basis of such review and consultation that

there is a reasonable basis for the commencement of this action.

SO CERTIFIED this 26th day of January, 2015.

_____

R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB# 102345)
COURTNEY M. WILLIAMS (MSB# 102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129B South President Street (39201)
Post Office Box 23785
Jackson, Mississippi  39225-3785
Tel: (601) 949-5080
Fax: (601) 949-3358