```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION
```

**CHARLES JOHNSON, Individually and as
Personal Representative of the Estate
of ETHEL JOHNSON, and on Behalf of and
for the Use and Benefit of the Wrongful
Death Beneficiaries of ETHEL JOHNSON**                              **PLAINTIFF**


**VS.**                                **CIVIL ACTION NO. 3:15-cv-238-WHB-JCG**


**TRINITY MISSION HEALTH & REHAB OF CLINTON, LLC,
d/b/a TRINITY HEALTH & REHAB OF CLINTON;
COVENANT DOVE, LLC; COVENANT DOVE HOLDING CO., LLC;
ARK MISSISSIPPI HOLDING CO., LLC;
CHRISTOPHER J. MURPHY; C. MICHAEL BAGLEY;
WENDY KELLY; UNIDENTIFIED ENTITIES 1-10; and
JOHN DOES 1-10 (as to the TRINITY MISSION
HEALTH & REHAB FACILITY)**                                         **DEFENDANTS**


                          <u>OPINION AND ORDER</u>

     This cause is before the Court on Plaintiff's Motion to Remand. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds the Motion is not well taken and should be denied.


              **I.   Factual Background and Procedural History**

     In February of 2012, Ethel Johnson became a resident of Trinity Mission Health and Rehab ("Trinity"), which is located in Clinton, Mississippi. Trinity is identified as being a "corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of

nursing care and treatment." Compl., ¶ 1.03. It is alleged that during her residency, Ethel Johnson had numerous falls, contracted infections and other medical conditions, and suffered from dehydration, malnutrition, and other "unexplained injuries". Id. at ¶ 3.02. It is further alleged that Ethel Johnson died on June 14, 2014, as a result of these alleged injuries. Id.

On January 26, 2015, Charles Johnson ("Johnson"), filed a lawsuit in state court seeking to recover actual and punitive damages based on Ethel Johnson's alleged injuries and wrongful death. The lawsuit was removed based on 28 U.S.C. § 1332, which grants federal courts subject matter jurisdiction over cases in which the amount in controversy exceeds $75,000.00, and the parties are diverse. Here, as Johnson does not dispute that he is seeking greater than $75,000 in damages and, based on the claims alleged in the Complaint, the Court finds it facially apparent that the amount in controversy requirement of Section 1332 is satisfied.

As regards diversity, Johnson is a citizen of Mississippi. Defendant Trinity is a limited liability company, the sole member of which is Defendant Ark Mississippi Holding Company, LLC ("AMHC"). The sole member of AMHC is Defendant Covenant Dove, LLC ("CD"). The sole member of CD is Defendant Covenant Dove Holding Company, LLC ("CDHC"). The sole member of CDHC is New Ark Investment, Inc., which is a Delaware corporation that has its principal place of business in Tennessee. See Not. of Removal, ¶

2

4 and n.1.  Thus, for the purpose of diversity analysis, Defendants Trinity, AMHC, CD, and CDHC are all considered citizens of Delaware and Tennessee.  See Harvy v. Gray Wolf Drilling, Co., 542 F.3d 1077, 1080 (5th Cir. 2008).  Defendants Christopher Murphy and C. Michael Bagley are both citizens of North Carolina.  See Not. of Removal, ¶ 5.  Defendant Wendy Kelly ("Kelly") is, like Johnson, a citizen of Mississippi.  The removing defendants, however, argue that Kelly has been improperly joined as a defendant in this lawsuit and, therefore, her citizenship should be disregarded for the purpose of diversity analysis under Section 1332.  Arguing that Kelly has not been improperly joined, Johnson has moved for remand.

## II.  Improper Joinder Standard

The party removing a lawsuit bears the burden of proving the existence of federal subject matter jurisdiction.  See Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993).  As such, when a case is removed on the theory of improper joinder, the removing party bears the burden of establishing the non-diverse party was improperly joined.  See Laughlin v. Prudential Ins. Co., 882 F.2d 187, 190 (5th Cir. 1989).  To establish improper joinder, the removing party must prove either actual fraud in the pleading of jurisdictional facts or the inability to establish a cause of action against the non-diverse party in state court.  See Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)

3

(quoting <u>Travis v. Irby</u>, 326 F.3d 646-47 (5th Cir. 2003)). In cases in which improper joinder is predicated, *inter alia*, on the plaintiff's alleged inability to establish a claim against the non-diverse defendant:

> The court must determine whether the plaintiff has any possibility of recovery against the party whose joinder is questioned.  If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no improper joinder. This possibility, however, must be reasonable, not merely theoretical.

<u>Travis</u>, 326 F.3d at 648 (quoting <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002)) (alterations in original).

### III.  Discussion

The issue to be decided by this Court is whether Johnson has a reasonable possibility of recovering on the claims he alleges against Kelly.  Kelly avers that she was employed by CD as a Clinical Services Coordinator between February and October of 2012, as was then promoted to the position of Director of Clinical Services.  <u>See</u> Resp. [Docket No. 13], Ex. B, ¶ 3.  Kelly further avers that the positions she held involved: providing regulatory compliance support and operational oversight to various CD facilities; assisting CD facilities in complying with state and federal nursing home rules, regulations, and minimum standards; monitoring nursing operations; and making recommendations to other

4

administrators and nursing leadership for operational improvements in nursing care at CD facilities. Id. at ¶ 4. Kelly's position does not include the providing of "hands-on nursing care or treatment to residents" and in particular to Ethel Johnson. Id. Based on the administrative nature of Kelly's position, the removing defendants argue that Johnson cannot recover on any of the claims he has alleged against her under Mississippi law. See Howard v. Estate of Harper, 947 So.2d 854, 856-62 (Miss. 2006) (holding (1) there is no common law or statutory duty of care owed by a nursing home administrator to the nursing home's patients, (2) as a matter of law, administrators of a nursing home cannot be liable for medical malpractice unless a doctor-patient relationship existed, and (3) as a matter of law, there is no fiduciary duty between a nursing home's administrator and the home's patients).

In response, Johnson argues that he has alleged viable negligence and malpractice claims against Kelly. See Mem. in Supp. of Mot. [Docket No. 12], ¶ 1.1. Succinctly, Johnson argues:

> [I]f Ms. Kelly had been doing her job, it would have been discovered that the persons caring for [Ethel] Johnson had a complete, grossly negligent lack of understanding of how to handle fall-risk patients, were not following the basic nursing standards, failed to implement proper fall interventions, and provided inadequate training, policies, and competencies for how to care for fall-risk patients with dementia...

Id. at ¶ 2.6. Johnson further argues that because of these "failures" on the part of Kelly, Ethel Johnson "was harmed and died." Id.

5

In the area of nursing home liability, the Mississippi Supreme Court has held that "a nursing home or its owner may be held liable under general tort law principles for negligence regarding the care of a resident."  Estate of Hazleton ex rel. Hester v. Cain, 950 So.2d 231, 236 (Miss. 2007).  That duty is not, however, extended to nursing home administrators.  Id.  Instead:

> [An] agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.

Id. (quoting Turner v. Wilson, 620 So.2d 545, 548-49 (Miss. 1993)).  Thus, under Mississippi law, "a corporate director is not personally liable to a third party merely by reason of his corporate status for the torts committed by other personnel.  Some showing of direct personal involvement by the corporate officer in a decision or action which is causally related to the plaintiff's injury is required."  Id. (citing Turner, 620 So.2d at 548-49).

Here, there are no allegations in the Complaint that Kelly directed, authorized, or had any personal involvement in the specific treatment of and/or any other specific actions involving Ethel Johnson while she was a resident at Trinity.  Instead, the allegations in the Complaint pertaining to Kelly are predicated on her alleged failure to either implement proper policies or

adequately supervise the nursing staff.  See e.g. Compl., ¶ 3.55 (alleging that the nursing consultants Kelly oversaw failed to discover problems relating to Ethel Johnson's care and failed to conduct adequate quality assurance audits); Id., ¶ 3.59 (alleging that Kelly failed to properly supervise and control the employees of Trinity); Id., ¶ 3.62 (alleging that Kelly was negligent with regard to: "decision-making control"; staffing; budgeting; auditing; providing and implementing policies and procedures; and providing other support services); Id., ¶ 3.64 (alleging that Kelly failed to create and implement proper policies and procedures); Id., ¶¶ 3.65-3.70 (alleging that Kelly failed to provide adequate support services; failed to adequately review records regarding the operation of Trinity; failed to ensure that Trinity had sufficient qualified nursing personnel; failed to assess, evaluate, and supervise the nursing personnel).  While each of these allegations relate to Kelly's administrative duties, they do not establish that she had any duty directly to Ethel Johnson.  Because there are no factual allegations in the Complaint that Kelly had direct personal involvement in any specific decision or action that was causally related to Ethel Johnson's care, the Court finds Johnson has no possibility of recovering on the negligence claims he has alleged against Kelly in the Complaint.

Johnson also argues that he has stated a viable malpractice claim against Kelly.  There are no allegations in the Complaint,

7

however, that a nurse-patient relationship existed between Kelly and Ethel Johnson.  In the absence of such relationship, Johnson has no possibility of recovering on his medical malpractice claim against Kelly.  See e.g. Howard, 947 So.2d at 860 (holding that nursing home administrators cannot be liable for medical malpractice because the administrators are not medical care providers and their responsibilities are to the nursing home); Cheeks v. Bio-Medical Applications, Inc., 908 So.2d 117, 120 (Miss. 2005)(explaining that a plaintiff must establish a doctor-patient relationship and its attendant duty of care in order to present a prima facie case of medical malpractice).

In sum, having considered the allegations in the Complaint, the Court finds Johnson does not have any possibility of recovering on the negligence or malpractice claims he has alleged against Kelly.  Accordingly, the Court finds the removing defendants have satisfied their burden of showing that Kelly was improperly joined as a defendant in this case.  Johnson's Motion to Remand will, therefore, be denied, and Kelly will be dismissed from this action.

### IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Docket No. 12] is hereby denied.  Counsel for the removing defendants shall, within seven days of the date on which this

Opinion and Order is entered, contact the Chambers of United States Magistrate Judge John C. Gargiulo, and request the scheduling of a Case Management Conference.

    IT IS FURTHER ORDERED that Wendy Kelly is hereby dismissed as a defendant from this lawsuit.

    SO ORDERED this the 24th day of July, 2015.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE
